1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF ILLINOIS

3

4
     UNITED STATES OF AMERICA,     )
5                                  )
              Plaintiff,           )
6                                  )   Criminal No. 1:18-10060
          vs.                      )
7                                  )
     ERIC INGRAM,                  )
8                                  )
              Defendant.           )
9

10              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE MICHAEL M. MIHM
11              CHANGE OF PLEA HEARING
            DECEMBER 4, 2018; 3:28 P.M.
12                PEORIA, ILLINOIS

13
     APPEARANCES:
14

15   For the Government:      KATHERINE G. LEGGE, ESQUIRE
                              DOUGLAS F. McMEYER, ESQUIRE
16                            Asst. United States Attorneys
                              211 Fulton Street, Suite 400
17                            Peoria, Illinois 61602
                              (309) 671-7050
18

19   For the Defendant:       ROBERT A. ALVARADO, ESQUIRE
                              Federal Public Defender
20                            401 Main Street, Suite 1500
                              Peoria, Illinois 61602
21                            (309) 671-7891

22

23          Jennifer E. Johnson, CSR, RMR, CRR
              U.S. District Court Reporter
24            Central District of Illinois

25   Proceedings recorded by mechanical stenography;
     transcript produced by computer

1     (Proceedings held in open court.)

2     THE COURT:  Good afternoon.  This is the case

3  of the *United States of America vs. Eric Ingram*,

4  Criminal Number 18-10060.  The defendant is in

5  court represented by his attorney, Rob Alvarado.

6  The United States is represented by Kate Legge and

7  Doug McMeyer.

8     The matter is set today for what,

9  Mr. Alvarado?

10    MR. ALVARADO:  Judge, it's going to be a blind

11 plea today to both counts of the indictment.

12    THE COURT:  Okay.  Is there any agreement

13 concerning sentence?

14    MR. ALVARADO:  No, sir.

15    THE COURT:  Okay.  I did have one question for

16 counsel before we get started.  I note in looking

17 at the penalties that for Count I it's at least

18 five years, and for Count II it's at least five

19 years.

20    Do those -- are those sentences that could run

21 concurrently, or are they -- would they run

22 consecutively?

23    MS. LEGGE:  I believe that would be at the

24 Court's discretion, Your Honor.  They are not

25 mandatory consecutive.

1     THE COURT:  Okay.  That resolves that.  Thank

2  you.

3     Mr. Ingram, this process of tendering a plea

4  of guilty will involve your answering a number of

5  questions put to you while you're under oath so

6  please raise your right hand to be sworn.

7     **(Defendant sworn by the clerk.)**

8                    **EXAMINATION**

9  BY THE COURT:

10  Q.  Now that you have been sworn, do you

11  understand that your answers to my questions are

12  subject to the penalties of perjury or of making a

13  false statement if you don't answer truthfully?

14  A.  Yes, sir.

15  Q.  What is your full name, sir?

16  A.  Eric Lynn Ingram.

17  Q.  What's your middle name?

18  A.  Lynn.

19  Q.  How old are you?

20  A.  I'm 30 years old.

21  Q.  How far did you go in school?

22  A.  I received a GED.

23  Q.  Great.

24     Have you been treated recently for any mental

25  illness or addiction to narcotic drugs?

1  A.  No, sir.

2  Q.  Are you currently under the influence of any

3  drug, medication or alcoholic beverage?

4  A.  No, sir.

5  Q.  Have you received a copy of the indictment --

6  that is, the formal charges?

7  A.  Yes, sir.

8  Q.  Have you fully discussed those charges and the

9  case in general, including any possible defenses

10  that you might have, with Mr. Alvarado as your

11  attorney?

12  A.  Yes, sir.  We went over it yesterday.

13  Q.  Are you fully satisfied with the counsel,

14  representation and advice given to you in this case

15  by Mr. Alvarado?

16  A.  Yes, sir.

17  Q.  So, as I understand it, you're going to plead

18  guilty to the two counts in the indictment, and

19  also there's no agreement or understanding between

20  you and the government as to what your sentence

21  would be if you plead guilty.  Is that correct?

22  A.  Yes, sir.

23  Q.  Has anyone made any promises or assurances of

24  any kind to you in an effort to induce you to plead

25  guilty?

1  A.   No, sir.

2  Q.   Has anyone attempted in any way to force you

3  to plead guilty?

4  A.   No, sir.

5  Q.   Are you pleading guilty of your own free will

6  because you are guilty?

7  A.   Yes, sir.

8  Q.   Do you understand that the offense to which

9  you're pleading guilty -- offenses are felony

10  offenses?  If your pleas are accepted, you will be

11  adjudged guilty of those offenses.  Such

12  adjudications may deprive you of valuable civil

13  rights, such as the right to vote, the right to

14  hold public office, the right to serve on a jury,

15  and the right to possess any kind of firearm.

16       Do you understand?

17  A.   Yes, sir.

18  Q.   Also, because of the sexual nature of the

19  crimes that you're pleading guilty to, do you

20  understand that a conviction for these offenses

21  would likely result in substantial future

22  restrictions on where you may live or work and with

23  whom you may associate?

24  A.   Yes, sir.

25  Q.   Looking at these two counts, Count I, receipt

6

1  of child pornography, that count carries with it a
2  -- excuse me, a mandatory minimum penalty of
3  5 years up to 20 years in prison, a fine of up to
4  $250,000, at least five years supervised release up
5  to lifetime, and a fine of $5,000 -- a fine of
6  $5,000 and a special assessment of $100.
7      This reference to supervised release means
8  that at the time of sentencing, in addition to
9  imposing a term of imprisonment, I would also order
10 that, beginning the day you're released from
11 custody, you would go through this period of
12 supervision.  During that time, your conduct would
13 be subject to a number of terms and conditions.  If
14 it was later determined that you had violated any
15 of those terms, you could be sent back to prison.
16     Do you understand?
17 A.  Yes, sir.
18 Q.  The maximum penalties you're facing are the
19 same for Count II.  It's a mandatory minimum
20 5 years up to 20 years, fine of up to $250,000,
21 supervised release term of five years to life, a
22 special $5,000 fine per count, plus a $100 special
23 assessment.
24     Do you understand?
25 A.  Yes.

7

```
1  Q.   Do you have any questions concerning the
2  consequences of your plea?
3  A.   No, sir.
4  Q.   Have you and Mr. Alvarado talked about how the
5  sentencing guidelines might apply to your case?
6  A.   Yes, sir.
7  Q.   Do you understand that the Court will not be
8  able to determine the advisory guideline range for
9  your case until after the presentence report has
10 been completed and you and the government have had
11 an opportunity to challenge the reported facts and
12 the application of the guidelines recommended by
13 the probation officer, and that the sentence
14 ultimately imposed may be different from any
15 estimate your attorney may have given you up to
16 this point?
17 A.   Yes, sir.
18     THE COURT:  Mr. Alvarado, what's the
19 worst-case scenario you've discussed with your
20 client concerning the guidelines?
21     MR. ALVARADO:  Judge, we discussed a range of
22 168 to 210 months.  The probation office will
23 probably apply a cross-reference to production of
24 child pornography, so I've taken that into account.
25     THE COURT:  Okay.
```

BY THE COURT:

Q.   Is that correct?  Have you had that discussion?

A.   Yes, sir.

Q.   So, what will happen at the sentencing is I will set the exact sentencing profile that I think is the correct one for you and this case.  I will then go on and make a number of other findings concerning a variety of sentencing factors.  And then at the end of that process, I would have discretion to impose a sentence that's above the guideline range or within the range or below the range, but I could not go below the mandatory minimum.

A.   Okay.

Q.   Do you understand?

A.   Yes, sir.

Q.   Parole has been abolished.  You would not be released on parole.  What that means is you would serve 100 percent of your sentence except you would qualify for up to 54 days of good-time reduction a year.  So, assuming good behavior, you'd serve about 85 percent of your sentence.

Do you understand?

A.   Yes, sir.

9

1  Q.  Do you also understand that under some

2  circumstances you or the government may have the

3  right to appeal any sentence that I impose?

4  A.  Yes, sir.

5  Q.  Do you understand that you have a right to

6  plead not guilty to any offense charged against you

7  and to persist in that plea?  You would then have

8  the right to a trial by jury.

9      At trial, you would be presumed to be

10  innocent, and the government would have to prove

11  your guilt beyond a reasonable doubt.

12      You would have the right to the assistance of

13  counsel for your defense -- appointed by the Court,

14  if necessary -- at every stage of the proceeding,

15  the right to see and hear all the witnesses and

16  have them cross-examined in your defense, the right

17  on your own part to decline to testify unless you

18  voluntarily elected to do so in your own defense,

19  and the right to compel the attendance of witnesses

20  to testify in your defense.

21      Do you understand all those rights?

22  A.  Yes, sir.

23  Q.  Do you understand that should you decide not

24  to testify or not to put on any evidence, those

25  decisions cannot be used against you?

1    A.   Yes, sir.

2    Q.   Do you understand?

3    A.   Yes, sir.

4    Q.   Do you further understand that by entering a

5    plea of guilty, if that plea is accepted by the

6    Court, there will be no trial; and you will have

7    waived or given up your right to a trial as well as

8    those other rights associated with a trial as I

9    just described them?

10        Do you understand?

11   A.   Yes, sir.

12   Q.   So, I'm looking now at the indictment,

13   Count I, receipt of child pornography.  It alleges

14   that on about June 20th of this year, in this

15   federal district, you did knowingly receive a

16   visual depiction, namely -- and then it sets out a

17   whole series of numbers there.

18        Do you see them?

19   A.   Yes, sir.

20   Q.   And it alleges that you used any means and

21   facility of interstate commerce and in affecting

22   interstate commerce where the producing of such

23   visual depiction involved the use of a minor

24   engaging in sexually explicit conduct and that such

25   depiction was of such conduct.

1     You'll note the use of the word "knowingly" in
2  this charge.  That word is defined as meaning that
3  your conduct was voluntary, that you understood
4  what you were doing, that your conduct was not the
5  result of ignorance, accident, mistake or some
6  other innocent reason.
7     Do you understand that?
8  A.   Yes, sir.
9  Q.   And where it talks about interstate commerce,
10  that means commerce between another state and the
11  state of Illinois or another country and the state
12  of Illinois.
13     Do you understand that?
14  A.   Yes, sir.
15  Q.   Excuse me.
16     (A pause was had in the record.)
17  BY THE COURT:
18  Q.   The phrase "sexually explicit conduct" also
19  appears in this charge, and that phrase is actually
20  defined in Title 18, Section 2256.  I want to make
21  you aware of that.  Sexually explicit conduct means
22  actual or simulated sexual intercourse including
23  genital-genital, oral-genital, anal-genital or
24  oral-anal, whether between persons of the same or
25  opposite sex, bestiality, masturbation, sadistic or

1  masochistic abuse, or a lascivious exhibition of

2  the genitals or pubic area of any person.

3       Do you understand that definition?

4  A.  Yes, sir.

5  Q.  Okay.  Do you have any questions concerning

6  what you're charged with in Count I?

7  A.  No, sir.

8  Q.  So, if Count I were to go to trial, the

9  government would be required to prove certain

10  elements beyond a reasonable doubt.  They would

11  have to prove that on about this date you did, in

12  fact, knowingly receive a visual depiction -- that

13  being the one that's set out in the indictment --

14  using any means and facility of interstate

15  commerce.

16       THE COURT:  I'm assuming we're talking about a

17  computer here; is that correct?

18       MR. ALVARADO:  (Counsel nods head.)

19       THE DEFENDANT:  (Defendant nods head.)

20  BY THE COURT:

21  Q.  They would have to prove that the producing of

22  such visual depiction involved the use of a minor

23  -- and by the way, "minor" is defined as a person

24  under the age of 18 -- engaging in sexually

25  explicit conduct as I defined for you, and that the

1  depiction was of such conduct.

2      Do you understand what they would have to

3  prove if Count I went to trial?

4  A.  Yes, sir.

5  Q.  And then Count II charges on July 31st, in

6  Tazewell County, in this federal district, you did

7  knowingly receive a visual depiction, and then it's

8  got another whole line of numbers.  It's a

9  different number.

10      Do you see the number in Count II?

11  A.  Yes, sir.

12  Q.  Again, using any means and facility of

13  interstate commerce and in affecting interstate

14  commerce, where the producing of such visual

15  depiction involved the use of a minor engaged in

16  sexually explicit conduct and such depiction was of

17  such conduct.

18      The definitions I gave you regarding Count I

19  are all the same for Count II.

20      Do you understand what you're charged with in

21  Count II?

22  A.  Yes, sir.

23  Q.  And if this went to trial, the government

24  would have to prove that on about July 31st you

25  did, in fact, knowingly receive the visual

1   depiction that's named in Count II; that you did

2   that by way of using a facility or means of

3   interstate commerce; that the producing of that

4   visual depiction involved the use of a minor

5   engaged in sexually explicit conduct; and they

6   would have to prove that such depiction was of such

7   conduct.

8       Do you understand what the government would

9   have to prove if Count II went to trial?

10  A.   Yes, sir.

11  Q.   Then I need to talk to you about what you did

12  here to satisfy myself that you are, in fact,

13  guilty as charged.

14      Going back to July 20th -- that's Count I --

15  where were you living at that time?

16  A.   I was currently living in Washington, at

17  504 Hillcrest.

18  Q.   Okay.  And is that where this happened?

19  A.   That is where this happened, sir.

20  Q.   Okay.  And on that date, did you receive a

21  visual depiction of child pornography?

22  A.   Yes, sir, I did.

23  Q.   Is it the -- is it the image that's described

24  in that very long series of numbers?

25  A.   Yes, sir, it is.

1   Q.   Okay.  How did you do that?

2   A.   I used my phone, talking to a minor, and had

3   her send me pictures of herself.

4   Q.   Okay.  So, this wasn't off of a website or

5   something?

6   A.   No, sir.

7   Q.   Okay.  So, what was your understanding as to

8   the age of this female?

9   A.   I really only knew she was underage.

10   Q.   How old did you think she was?

11   A.   16.

12   Q.   Okay.  What was the picture that she sent to

13   you?

14   A.   She sent me a picture of her genital area.

15   Q.   Of what?

16   A.   Of her genital area, her private area.

17   Q.   Exposed?

18   A.   Yes, sir.

19   Q.   Okay.  And so you received that at your -- on

20   your phone while you were at this address?

21   A.   Yes, sir.

22   Q.   Is that correct?

23       Okay.  And then as to Count II, something on

24   July 31st, what was that?

25   A.   That was a picture of her doing a sexual act

1  using a hairbrush.

2  Q.  Okay.  Putting that in her vagina?

3  A.  Yes.

4  Q.  Okay.  Was she clothed at that time?

5  A.  No, sir.

6  Q.  And again, you received that over your cell

7  phone?

8  A.  Yes, sir.

9  Q.  All right.  I'm going to ask Ms. Legge now to

10 tell us what she believes the government's proof

11 would be if this went to trial.

12      THE COURT:  Mr. Alvarado?

13      MR. ALVARADO:  Your Honor, if I could correct

14 Mr. Ingram, I believe that she was 15 years old at

15 the time of the offense.  She may be 16 years old

16 now.

17      THE COURT:  Okay.

18      MR. ALVARADO:  I'm not sure.

19      THE COURT:  All right.

20      MR. ALVARADO:  Certainly under 18.

21      THE COURT:  All right.  Thank you.

22      I'm going to ask Ms. Legge to tell us what she

23 believes the government's proof would be if this

24 case went to trial.  Listen carefully to what she

25 says.  When she finishes her statement, I'll ask

1  you if this is an accurate statement of what

2  happened.

3        THE DEFENDANT:  Okay.

4        THE COURT:  Ms. Legge.

5        MS. LEGGE:  Thank you, Your Honor.

6        If the parties proceeded to trial, the

7  government would provide evidence that on

8  September 10th, 2018, a Detective Smith from the

9  Washington Police Department received two

10 CyberTipline reports from Facebook.

11       In the first CyberTipline report, Facebook

12 personnel reported that a particular user, which we

13 will refer to as Minor Victim 1, had sent images of

14 -- images and videos of her masturbating to another

15 Facebook user at -- with the title name Eric

16 Ingram.  The CyberTipline report indicated and

17 provided Detective Smith the minor victim's name,

18 phone, date of birth which indicated that she was

19 15 years old, email address, user ID and et cetera

20 information.

21       That CyberTipline report also provided the

22 same information about username Eric Ingram which

23 included the name, the age, which listed 30 years

24 old, date of birth, screen name, IP address,

25 et cetera.

1      The CyberTipline was accompanied with numerous
2  images that Facebook had sent with the CyberTipline
3  that were images sent by Minor Victim 1 to the user
4  Eric Ingram.  Among those --
5      THE COURT:  How would someone have those?
6      MS. LEGGE:  Pardon me?
7      THE COURT:  How would someone have those if
8  they were sent from the 15-year-old to him?
9      MS. LEGGE:  They were sent through the
10 Facebook Messenger application, and Facebook
11 intercepted them and viewed them --
12     THE COURT:  Ah, okay.
13     MS. LEGGE:  -- themselves and then reported
14 them.
15     THE COURT:  Okay.  Thank you.
16     MS. LEGGE:  Among the images that Facebook
17 reported are the images as detailed in Count I with
18 -- that ends in 9508_n.mp3 (sic), and Detective
19 Smith viewed that image and saw that it was --
20 excuse me, it was a video file and saw that that
21 video file lasted approximately six seconds, and it
22 depicted a female -- a nude female repeatedly
23 inserting the handle of a black brush inside her
24 vagina.  The camera was placed above the female's
25 vagina, and he could see that the female was

1  sitting on a multicolored blanket that contained

2  small, multicolored squares that was also shown in

3  other images.

4      The information provided by Facebook indicated

5  that this particular image was uploaded and sent

6  via Facebook Messenger by the Minor Victim 1 on

7  July 20th, 2018.

8      Another image that Detective Smith viewed was

9  the image at issue in Count II that ends in

10 4992_n.mp3 (sic).  This also was a digital video

11 file that depicted a female repeatedly inserting

12 the handle of a black brush inside her vagina and

13 that it clearly showed the female's vagina and

14 showed that it was her left hand on the brush and

15 that her pants and underwear were pulled down to

16 her ankle.

17     The information provided by Facebook shows

18 that Minor Victim 1 uploaded that video file on

19 July 31st, 2018, and sent that through Facebook to

20 the user Eric Ingram.

21     The government would then provide evidence

22 that based on these CyberTiplines, Detective Smith

23 with the Washington Police Department viewed not

24 only a first CyberTipline but the second one which

25 did not contain any images or video files but

1   instead contained chat messages between Minor

2   Victim 1 and the user Eric Ingram.  In those chat

3   messages, Detective Smith saw that on July 19th the

4   username Eric Ingram instructed Minor Victim 1 to

5   masturbate by placing the handle of the hairbrush

6   into her vagina and contained multiple sexually

7   explicit conversations in where Eric Ingram

8   instructed the Minor Victim 1 what to do.

9       Detective Smith was able to identify Facebook

10   user Eric Ingram to an adult male Eric Ingram

11   through Illinois Secretary of State records as well

12   as Washington Police Department records and

13   discovered that he resided at 40 -- 504 Hillcrest

14   Drive in Washington.

15       Furthermore, an inquiry into the IP address

16   associated with the Facebook user Eric Ingram was

17   done and indicated that it came back to a phone

18   number to Diversified Mechanical which was Eric

19   Ingram's employer.

20       Based on this, Washington Police Department

21   and agents from Homeland Security Investigation

22   conducted a residential search warrant at 504

23   Hillcrest in Washington and discovered multiple

24   electronic items and also identified Eric Ingram.

25       He was identified and provided a statement

1   that, among other things, he agreed that he

2   accessed the Eric Ingram Facebook account, used

3   that Facebook account to talk to the Minor

4   Victim 1, knew the Minor Victim 1 personally and

5   had for several years, and admitted that he traded

6   several sexual-related files with Minor Victim 1

7   through Facebook Messenger in July or August of

8   2018.

9       We would also provide evidence that Minor

10  Victim 1 was identified, located and interviewed,

11  that she verified she did create these images at

12  the request of the defendant and sent those to him

13  across Facebook Messenger.

14      THE COURT:  All right.  Thank you.

15      Is this an accurate statement of what

16  happened?

17      THE DEFENDANT:  Yes, sir.

18      THE COURT:  How do you now plead to the charge

19  of receipt of child pornography --

20      MS. LEGGE:  Your Honor, sorry to interrupt.  I

21  do believe that the defendant needs to be advised

22  as to the mandatory restitution pursuant to 18 USC

23  2259 since it is a child exploitation type case.

24      THE COURT:  I'm sorry, the mandatory

25  restitution what?  Oh, okay.

1    Oh, yes, I normally ask that question.  Is
2  there an element of restitution here?
3    MS. LEGGE:  The question has been posed to the
4  victim.  We have not yet received a response.
5    THE COURT:  Okay.
6  BY THE COURT:
7  Q.  So, what that means is we don't know at this
8  point whether there will be a claim that you be
9  ordered to pay restitution of some sort.  We'll
10 know that by the time we come in for the
11 sentencing.  If there is a claim for restitution,
12 both sides will have the opportunity to present
13 evidence and argument, and then I'll make a
14 decision on that point.
15    Do you understand?
16 A.  Yes, sir.
17 Q.  Okay.
18    THE COURT:  How do you now plead to the charge
19 of receipt of child pornography as alleged in
20 Count I:  Guilty or not guilty?
21    THE DEFENDANT:  Guilty.
22    THE COURT:  How do you now plead to the charge
23 of receipt of child pornography as alleged in
24 Count II of the indictment:  Guilty or not guilty?
25    THE DEFENDANT:  Guilty.

1    THE COURT:  It is the finding of the Court in
2  the case of the *United States of America vs. Eric*
3  *Ingram* that the defendant is fully competent and
4  capable of entering an informed plea, that he is
5  aware of the nature of the charges and the
6  consequences of the plea, and that the plea of
7  guilty is a knowing and voluntary plea supported by
8  an independent basis in fact containing each of the
9  essential elements of the offense.
10     His plea is therefore accepted, and the
11  defendant is now adjudged guilty of those two
12  counts.
13     The Court directs the probation office to
14  prepare a presentence report in this case.
15     You will be asked to give information for that
16  report.  Mr. Alvarado will be with you during that
17  process.  Once the report is prepared, copies will
18  be made available to everyone, including you.  You
19  will be expected to read the report carefully,
20  review it carefully with your attorney, and then
21  tell us whether you believe the report is accurate
22  and complete.
23     If there are any disputes concerning the
24  accuracy or completeness of the report, I will
25  resolve those at a sentencing hearing that I

1  recommend occur on April 4th at 11 a.m.

2      Will that date and time work for both sides?

3      MS. LEGGE:  Yes, Your Honor.

4      MR. ALVARADO:  That's fine, Judge.

5      THE COURT:  Okay.  Anything else today?

6      MS. LEGGE:  No, Your Honor.

7      MR. ALVARADO:  Nothing else.

8      THE COURT:  All right.  Thank you, sir.

9      THE CLERK:  Court is adjourned.

10     (Proceedings concluded at 3:56 p.m.)

11              CERTIFICATE OF OFFICIAL REPORTER

12

13     I, Jennifer E. Johnson, CSR, RMR, CBC, CRR,
in and for the United States District Court for the
14  Central District of Illinois, do hereby certify
that pursuant to Section 753, Title 28, United
15  States Code that the foregoing is a true and
correct transcript of the stenographically reported
16  proceedings held in the above-entitled matter and
that the transcript page format is in conformance
17  with the regulations of the Judicial Conference of
the United States.

18     Dated this 2nd day of October, 2019.

19

20              /s/ Jennifer E. Johnson
                 JENNIFER E. JOHNSON
21               CSR, RMR, CBC, CRR
                 License #084-003039
22

23

24

25