1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF ILLINOIS

3

4

UNITED STATES OF AMERICA,    )
5                            )
          Plaintiff,         )
6                            )   Criminal No. 1:18-10060
       vs.                   )   (1:18-mj-06091)
7                            )
ERIC INGRAM,                 )
8                            )
          Defendant.         )
9

10        TRANSCRIPT OF RECORDED PROCEEDINGS
        BEFORE THE HONORABLE JONATHAN E. HAWLEY
11                  DETENTION HEARING
              OCTOBER 10, 2018; 8:58 A.M.
12                 PEORIA, ILLINOIS

13
APPEARANCES:
14

15 For the Government:      KATHERINE G. LEGGE, ESQUIRE
                            Asst. United States Attorney
16                          211 Fulton Street, Suite 400
                            Peoria, Illinois 61602
17                          (309) 671-7050

18
For the Defendant:         ROBERT A. ALVARADO, ESQUIRE
19                          Federal Public Defender
                            401 Main Street, Suite 1500
20                          Peoria, Illinois 61602
                            (309) 671-7891
21

22              Transcribed By:
        Jennifer E. Johnson, CSR, RMR, CRR
23          U.S. District Court Reporter
            Central District of Illinois
24

Proceedings recorded by electrical sound recording;
25 proceedings recorded by mechanical stenography from
said recording; transcript produced by computer

2

1                              INDEX

                                                    PAGE
2

3   WITNESS FOR THE DEFENDANT:

4      JOANNE BRUNK

5          Direct Examination                    4
           Cross-Examination                     8
6          Redirect Examination                 11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings held in open court.)

2      THE COURT:  Call the case, please.

3      COURTROOM DEPUTY:  Calling the case of the

4  United States of America vs. Eric Ingram, Criminal

5  Case 18-mj-6091.

6      Counsel, please enter your appearance.

7      MS. LEGGE:  Kate Legge on behalf of the

8  government, Your Honor.

9      MR. ALVARADO:  Your Honor, Rob Alvarado on

10  behalf of the defendant, Eric Ingram.  He's present

11  in open court.

12      THE COURT:  Okay.  We're here today for a

13  detention hearing.

14      Mr. Alvarado, are you ready to proceed?

15      MR. ALVARADO:  Yes, Judge.

16      THE COURT:  Okay.  Ms. Legge?

17      MS. LEGGE:  Yes, Your Honor.

18      THE COURT:  Okay.  Mr. Alvarado, do you have

19  evidence to present by way of testimony or proffer?

20      MR. ALVARADO:  Judge, I have one witness.  I'd

21  like to call Joanne Brunk.

22      THE COURT:  Okay.  Miss Brunk, if you'd please

23  step forward and be sworn in?

24      **(Witness sworn by the clerk.)**

25      THE COURT:  Okay.  Ma'am, if you'd please have

1  a seat here and pull that microphone as close as

2  you can.

3  **JOANNE BRUNK,**

4  called as a witness, was examined and testified

5  upon her oath as follows:

6  **DIRECT EXAMINATION**

7  BY MR. ALVARADO:

8  Q.  Ma'am, would you state your full name for the

9  record, and could you keep your voice up so

10  everybody can hear?

11  A.  Joanne Brunk.

12  Q.  Ma'am, where do you live?

13  A.  504 Hillcrest in Washington.

14  Q.  How long have you lived there?

15  A.  35 years.

16  Q.  And that's a house, I take it?

17  A.  Yes.

18  Q.  Your grandson in this case, Eric Ingram, is

19  the defendant; is that correct?

20  A.  Yes.

21  Q.  Has he lived with you at that address his

22  whole life?

23  A.  Yes.

24  Q.  You are his grandmother, but essentially

25  you're his mother?  Did you raise him?

1  A.   I -- we have raised him, yes.

2  Q.   His father and mother are, are not living in

3  the area?

4  A.   His father is in East Peoria.  His mother is

5  in Ohio.

6  Q.   Does he have a closer relationship to you than

7  he does to his mother and father?

8  A.   Yes.

9  Q.   What does your grandson do for a living?

10  A.   He's an HVAC tech.

11  Q.   And where does he work?

12  A.   He works in Peoria for DMI.

13  Q.   And does he work for a relative of him?

14  A.   Yes.

15  Q.   And who is that?

16  A.   Dave Ingram.  He's a, a cousin to Eric.

17  Q.   And he is present in the courtroom?

18  A.   Yes.

19  Q.   The other man that's with him, could you

20  identify him for the judge?

21  A.   He is my son, Michael Ingram.

22  Q.   And where does your son Michael live?

23  A.   In Washburn.

24  Q.   Okay.  Ma'am, do you understand that the

25  purpose here today is to see if your grandson is

1  released on bond while this case is pending?

2  A.   Yes.

3  Q.   If he is released to your home, would you

4  promise to follow all of the conditions of bond,

5  whatever the judge might set?

6  A.   Yes.

7  Q.   Would you report your grandson if he violated

8  any conditions of bond?

9  A.   Yes.

10 Q.   What sort of relationship do you have with

11 your grandson?  Is it a good relationship?

12 A.   A good relation (sic).  We're very close.

13 Q.   Does he respect you and the rules of your

14 house?

15 A.   Yes.

16 Q.   Now, he has a number of firearms, I

17 understand.  Would you make sure that those

18 firearms are taken out of the house if he's allowed

19 to come home?

20 A.   They've already been removed.

21 Q.   And I understand you have a tablet that can

22 connect to the internet?

23 A.   It has been taken out of the home also.

24 Q.   Now, you have a smartphone; is that correct?

25 A phone that can --

1  A.  Yes.

2  Q.  -- connect to the internet?

3  A.  Yes.

4  Q.  Is that password-protected?

5  A.  I'm not sure.

6  Q.  Would you promise that if your grandson comes

7  home with you that you would either

8  password-protect the phone or keep it away from him

9  and make sure that he can't use it?

10  A.  Yes.

11  Q.  Do you have any other Internet-capable devices

12  in the home?

13  A.  Not that I'm aware of.

14  Q.  Okay.  Would you make sure that if he came

15  home that no Internet-capable devices would be

16  allowed into your home other than your phone?

17  A.  Yes.

18  Q.  Do you see any reason why you could not make

19  sure that your grandson complied with all the

20  conditions of bond?

21  A.  I think he would be very compliant.

22  Q.  Now, you don't have a landline telephone --

23  A.  No.

24  Q.  -- in your house?

25      But would you make sure that whatever

1  equipment is necessary to monitor his location

2  could be installed in your home?

3  A.  Yes.

4  Q.  You understand that he would have to be on a

5  leg bracelet, a monitoring device?

6  A.  Yes.

7  Q.  Would you make sure that it's working properly

8  and that he's not trying to defeat it in any way?

9  A.  Yes.

10  Q.  I guess the probation office came to your home

11  the other day?

12  A.  Yes, he did.

13  Q.  Did you answer all of their questions?

14  A.  As far as I know I did.

15  Q.  Did you let them inspect your house?

16  A.  Yes.

17  Q.  By the way, you don't have anybody else living

18  there besides your grandson?

19  A.  No, sir.

20      MR. ALVARADO:  Your Honor, I have no further

21  questions.

22      THE COURT:  Okay.  Thank you.

23      Ms. Legge?

24                    **CROSS-EXAMINATION**

25  MS. LEGGE:

1  Q.  Good morning.

2  A.  Good morning.

3  Q.  Miss Brunk, how long has your grandson been

4  working as a HVAC tech?

5  A.  About five years.

6  Q.  And are you aware that part of those duties

7  involve occasionally repairing the systems in

8  schools or churches?

9  A.  Yes.

10  Q.  You stated that you had a tablet that was

11  internet-capable, correct?

12  A.  Yes.

13  Q.  Who purchased that tablet?

14  A.  Eric.

15  Q.  Did he buy it for you?

16  A.  Yes.

17  Q.  Did you --

18  A.  It was a birthday gift for me a couple of

19  years ago.

20  Q.  Did he help you set that up?

21  A.  He set it up and gave me two lessons, and I

22  still don't know how to use it.

23  Q.  Do you have Wi-Fi capability or Wi-Fi internet

24  in your home?

25  A.  I think so.  I'm not -- I'm not sure where we

1  stand with that.

2  Q.   Who helped you install that, if anyone?

3  A.   I don't know.

4  Q.   Would Eric have helped you get that set up?

5  A.   I think Eric would have ordered it or

6  whatever.   I'm -- it's not, not something that I

7  pay for, so I'm not sure --

8  Q.   Okay.

9  A.   -- about it.

10 Q.   You stated that you have a cell phone,

11 correct?

12 A.   Yes.

13 Q.   And that it's a cell phone capable of

14 connecting to the internet?

15 A.   Yes.

16 Q.   You're unsure whether or not it's

17 password-protected?

18 A.   I don't think it is.   There's no password that

19 I have to use to go in and check my messages.

20 Q.   Okay.   Do you use that cell phone to connect

21 to the internet?

22 A.   No, I just check messages that have come to me

23 through, through the email.

24 Q.   Okay.

25 A.   That's the only thing I use on it, is like

with -- my church sends me emails about what's
going on at church.

Q.   Did Eric help you set up your cell phone?

A.   No.  Where I purchased it, they set it up.

Q.   Has he ever helped you figure out any of the
settings on your cell phone if you had trouble
figuring out something?

A.   Well, he shows me where I'm supposed to be
pushing to get to my, my phone or, or back to my
contacts.  Sometimes I, I have trouble with that.

        MS. LEGGE:  Thank you.  No further questions.

        THE COURT:  Do you have cable TV in your
house?

        THE WITNESS:  Yes.

        THE COURT:  And who's your cable TV provider?

        THE WITNESS:  Dish.

        THE COURT:  Dish Network?  Okay.

        Okay.  All right.  Thank you.  You may step
down.

        MR. ALVARADO:  Your Honor, could I ask a
couple more questions?

        THE COURT:  Sure.

        Sorry, ma'am.

                    **REDIRECT EXAMINATION**

MR. ALVARADO:

1  Q.  Mrs. Brunk, I'm not sure if you would know the

2  answer to this, but does your internet connection

3  come through the cable in your house?

4  A.  Uhm, no, I think internet comes through

5  Frontier.

6  Q.  Okay.  So, you -- is there a -- is there a

7  separate router for your internet connection, like

8  a little, little piece of equipment in your house?

9  A.  We had a router when we were with MTCO, but I

10 don't think there's a router now.

11 Q.  Okay.  Now, the probation office, like I said,

12 has to have a leg monitor on Mr. Ingram.  They can

13 do it a couple of different ways -- with a landline

14 telephone or with a internet connection somewhere

15 in your house.

16     If they could do it with a landline telephone

17 as opposed to an internet connection, would you

18 have any need to have an internet connection in

19 your house?

20 A.  I don't think so.  I'm, I'm not that savvy

21 with all of that.

22 Q.  You don't get on the internet to retrieve your

23 email or anything like that?

24 A.  I use my cell phone to do that.

25     MR. ALVARADO:  Okay.  Your Honor, I have no

1  further questions.

2     THE COURT:  Okay.  All right.  Thank you.  You

3  may step down.

4     MR. ALVARADO:  Your Honor, I have no further

5  witnesses.

6     THE COURT:  Okay.  Any other evidence by way

7  of proffer?

8     MR. ALVARADO:  No, sir.

9     THE COURT:  Okay.  Miss Legge, evidence?

10     MS. LEGGE:  None.  We would simply re-proffer

11  the facts contained in the complaint filed

12  previously with the Court.

13     THE COURT:  Okay.  Mr. Alvarado, argument?

14     MR. ALVARADO:  Well, Your Honor, you've heard

15  the testimony of Mrs. Brunk.  I think she would be

16  an excellent third-party custodian.  I think she

17  comes across as a very concerned

18  grandmother/mother, and I really think that she

19  would be the eyes and ears of the probation office

20  in the home, watching Mr. Ingram.

21     I don't think there's any risk of flight in

22  this case or, if there is, it's a minimal risk.

23  Mr. Ingram has a five-year-old who lives in the

24  area that he is concerned with, but he has no other

25  real interest outside of this area to live in.  He

1  has no passport.  He has a job here.

2      Your Honor, there is one thing I would

3  proffer:  That if Mr. Brunk were released, he would

4  not be working at all.  He would be essentially --

5  in fact, I would recommend that he be on complete

6  home detention with no movement except approved by

7  the probation office.

8      There is a danger, of course, as there is in

9  any of these cases, but I would think that it could

10  be mitigated with whatever conditions the Court

11  would want to impose.

12      So, we would recommend his release.

13      THE COURT:  Okay.  Thank you.

14      Miss Legge?

15      MS. LEGGE:  Thank you, Your Honor.

16      As the Court is aware of the facts previously

17  explained in the complaint, this is a rebuttable

18  presumption case, and the defendant has to show by

19  clear and convincing evidence that he's not a

20  flight risk -- and we're not alleging that he is --

21  or a danger to others in the community.  And due to

22  the nature of this case involving his instruction

23  to a minor victim, grooming a minor victim, and

24  explicitly detailing sexually explicit conduct that

25  he wanted this minor victim to learn and produce

images of, there is a clear danger to not only that
minor victim but other potential victims on the
internet that the defendant could come into contact
with.

I do believe that Mrs. Brunk would try her
best and has been a very positive support system
for the defendant throughout his life, but it's
very clear from the testimony that the defendant is
the one who has the sophistication to use the
electronics in his home, and there are no
reasonable conditions that the Court could impose,
in the government's perspective, that could keep
him from contacting this minor victim as well as
other potential minor victims.

As the Court's aware in the facts, this
particular victim lives just over two miles from
the defendant, and based on his own admissions to
the investigators, he was in love with her, he knew
it was wrong, and had even talked about making
plans to meet up with her evening -- in the evening
of the chats that we have.

What is also alarming, I draw the Court's
attention to paragraph 19 in the complaint which is
the interview of the minor victim who stated that
once she told the defendant that she needed to stop

1  sending him these sexually explicit files because

2  it wasn't right -- the minor victim, 15 years old,

3  is standing up for herself saying, "This isn't

4  right.  I need to stop this" -- the defendant then

5  refuses to be her friend because she stopped

6  sending these files.

7       So, based on the fact that this involves

8  production, a local victim, a local victim who

9  tried to stop at which point he, you know, changed

10 his course of action in order to attempt to get her

11 to continue sending him these images and perhaps

12 meet up with him in the future, we do believe that

13 there is no set of conditions that the Court can

14 impose to reasonably assure the safety of this

15 victim.

16      So, for that reason we do believe that

17 detention is appropriate.

18      THE COURT:  Okay.  Thank you.

19      Okay.  Mr. Ingram, the standard that I have to

20 apply when considering whether or not you should be

21 detained or released pending the resolution of your

22 case, in this case, first of all, involves -- which

23 you've heard some discussion of -- what's called a

24 rebuttable presumption of detention.  So, there are

25 certain types of offenses just by the nature of the

offense that Congress has designated as offenses
where it's presumed that someone who is charged
with that type of offense would be detained pending
resolution of their case.

That presumption can be rebutted by the
defendant coming forward with some evidence to
rebut that presumption.  If that presumption is
rebutted, then it's up to the government to
establish that either you're a risk of flight or a
danger to the community and that there's no set of
conditions that can be imposed that would
reasonably assure your appearance in court or the
safety of the community.

So, the first question relates to whether the
presumption has been rebutted here.  So, that is a
presumption that as it relates to, you know, danger
in this case because I don't think anyone is
asserting that there is any significant risk of
flight.  The question is, Has the presumption been
rebutted as it relates to danger to the community?
So, the first question there is, What is the danger
we're talking about?

You know, by the nature of the offense, as
it's been alleged in the criminal complaint, one of
the dangers is continued receipt of child

1  pornography and through electronic means.
2  Additionally, there are additional facts in the
3  complaint, you know, which may result in different
4  charges ultimately being found by the grand jury if
5  they return an indictment in this case.  You know,
6  as Ms. Legge pointed out, there's a lot of other
7  facts in this criminal complaint that would
8  constitute conduct beyond simple receipt.
9      So, that's the danger, is, you know, is there
10  a danger that you could potentially continue to
11  engage in the type of conduct that's alleged in the
12  criminal complaint?  There are definitely
13  aggravating factors there.  This isn't just, you
14  know, sort of the basic offense which Congress has
15  said someone should be detained pending resolution
16  of the case is where someone is receiving child
17  pornography, whether it be electronically or
18  otherwise.
19      In this case, you know, it's aggravated by the
20  fact that there is an actual minor victim here
21  beyond simple photographs, someone who you're
22  communicating with, someone who is in the area.
23  So, that is an additional risk beyond just your
24  typical case that Congress has designated as
25  rebuttable presumption case.

1    Your grandmother has been presented as a
2  potential third-party custodian.  I have no doubt
3  your grandmother would do everything in her power
4  to see that you complied with conditions of bond in
5  this case.  One of those conditions would have to
6  be the inability to access the internet, obviously,
7  because that is the means in which you're alleged
8  to have committed the offense in this case.  And
9  through no fault of your grandmother's, you know,
10  she clearly doesn't have the sort of technical
11  ability to police that very well.  And a lot of
12  people don't.  And even people who are very tech
13  savvy, the reality is it is very difficult to
14  prevent people from finding a means to access the
15  internet in this day and age, with all of the
16  devices that can be used and all the different
17  ways, et cetera.
18    And so that is the primary danger here.  And,
19  unfortunately, there just are no conditions that I
20  can impose that would reasonably assure, given all
21  the facts in this case, that you would not have
22  access to an Internet-capable device.  And
23  especially given the nature of the conduct alleged
24  in this case and the weight of the evidence here,
25  given the statements that you made upon arrest, I

20

1  do find that you do not have sufficient evidence to

2  rebut the presumption of detention in this case,

3  and I am going to order that you be detained

4  pending resolution of your case.

5      Anything further from the government?

6      MS. LEGGE:  No, Your Honor.

7      THE COURT:  Mr. Alvarado?

8      MR. ALVARADO:  Nothing else, Judge.

9      THE COURT:  We'll be in recess.

10     (Proceedings concluded at 9:20 a.m.)

11

              CERTIFICATE OF OFFICIAL REPORTER

12

13

14         I, Jennifer E. Johnson, CSR, RMR, CBC, CRR,
   in and for the United States District Court for the
   Central District of Illinois, do hereby certify
15 that pursuant to Section 753, Title 28, United
   States Code that the foregoing is a true and
16 correct transcript of the recorded proceedings held
   in the above-entitled matter and that the
17 transcript page format is in conformance with the
   regulations of the Judicial Conference of the
18 United States.

19         Dated this 22nd day of March, 2021.

20

21                      /s/ Jennifer E. Johnson
                        JENNIFER E. JOHNSON
22                      CSR, RMR, CBC, CRR
                        License #084-003039
23

24

25